PRO–ECO, INC., Plaintiff–Appellant,

v.

BOARD OF COMMISSIONERS OF JAY COUNTY, INDIANA, Defendant–Appellee.

No. 93–3566.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1995.

Decided June 6, 1995.

David V. Miller (argued), F. Wesley Bowers, George C. Barnett, Jr., Cedric Hustace, Bowers, Harrison, Kent & Miller, Evansville, IN, for plaintiff-appellant Pro–Eco, Inc.

David R. Warshauer, Robert D. MacGill, Peter J. Rusthoven (argued), Barnes & Thornburg, Indianapolis, IN, Bradley K. Burkett, Whiteman, Shappell & Burkett, Portland, IN, Rosemary G. Spalding, Price & Barker, Indianapolis, IN, for defendant-appellee Bd. of Com'rs of Jay County, Ind.

Before WOOD, Jr., COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Pro–Eco seeks damages against the Jay County Board of Commissioners ("the Board") that allegedly stem from an illegal landfill moratorium ordinance ("ordinance" or "moratorium") which the Board passed in 1989 to prevent Pro–Eco from building a landfill in Jay County. Pro–Eco obtained a declaratory judgment under 28 U.S.C. § 2201 invalidating the ordinance, and we affirmed that judgment on appeal. *Pro–Eco v. Board of Comm'rs of Jay County, Ind.*, 956 F.2d 635 (7th Cir.1992) ("*Pro–Eco I* ").

Pro–Eco now seeks further relief under 28 U.S.C. § 2202. It alleges under 42 U.S.C. § 1983 that, in enacting the ordinance barring landfills in Jay County, the Board took Pro–Eco's property without paying compensation and violated Pro–Eco's constitutional

rights to due process and equal protection. Pro–Eco also alleges that the Board violated its rights under Indiana tort law by interfering with its "right to do business." The district court denied Pro–Eco's petition for further relief, concluding that Pro–Eco's claims were not "based on" the earlier declaratory judgment, as § 2202 requires. The district court also concluded that Pro–Eco is precluded from obtaining the damages it seeks because it did not have a protected interest in the land it wanted to use for a landfill when the Board passed the ordinance. Pro–Eco appeals.

In reviewing the district court's denial of Pro–Eco's petition for further relief, we assume familiarity with the background facts as set forth in *Pro–Eco I*, fleshing out additional facts as they become necessary.

## I. Standard of Review

■ The parties not only disagree on whether further relief ought to be available to Pro–Eco, they also disagree about the standard through which we should review the district court's action. Pro–Eco suggests we review the district court *de novo*. The Board argues for the more deferential abuse of discretion standard.

■ Section 2202, under which Pro–Eco brings this claim, provides as follows:

> Further necessary and proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

The statute's use of the term "may be granted" suggests that courts have some discretion in awarding further relief. Section 2201, the provision creating the right to bring a declaratory judgment action, uses similar discretionary language ("any court of the United States may declare the rights ..." 28

U.S.C. § 2201). Our circuit decided, after a period of inconsistency, that the discretion afforded by § 2201 lies with the court of appeals, not the district court. *See Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 747 (7th Cir.1987). Recognizing that "whether to allow a declaratory judgment action to proceed ... calls for 'discretion hardened by experience into rule,'" that is, it calls for a uniform standard in the circuit, we review *de novo* decisions of the district courts under 28 U.S.C. § 2201. *Id.* at 749.

In this case, we review the district court's denial of Pro–Eco's motion for further relief, a motion brought under 28 U.S.C. § 2202, not § 2201. The district court denied Pro–Eco's motion because it did not believe Pro–Eco's claims were "based on" the original declaratory judgment, as § 2202 requires, and because Pro–Eco could not demonstrate a constitutionally protected property interest. In light of this posture, with the district court deciding the case on pure questions of law, and in light of our circuit's decision to guard jealously the discretion afforded under the Declaratory Judgment Act, we will review the district court's denial of Pro–Eco's motion *de novo*.[1] Additionally, because we conclude that Pro–Eco has not alleged facts that would entitle it to relief on any of its stated theories of recovery, we do not examine whether its claim is based on the original declaratory judgment act.

## II. Whether Pro–Eco Has Stated Viable Theories of Recovery

### A. The Takings Clause

■ Pro–Eco alleges that, when the Board invalidly enacted the ordinance prohibiting the operation of a landfill in Jay County, the Board took Pro–Eco's property within the meaning of the Fifth Amendment's Takings Clause and that the Board must now pay Pro–Eco compensation for the property. But when the Board acted, Pro–Eco did not

---

**1.** Although we do not decide the issue here, we note that whether a motion for further relief under § 2202 is "based on" a prior declaratory judgment is the sort of issue that calls for general uniformity in the circuit, just as deciding under what general circumstances a declaratory judgment may be available calls for uniformity. We express no opinion as to the proper standard of review of a district court's decision under § 2202 that decides questions of fact, such as the amount of damages to be awarded. We affirm today because the plaintiff has not stated any viable theory of recovery, a decision that should always be susceptible to *de novo* review regardless of whether the claim is brought through the vehicle of the Declaratory Judgment Act.

own the land it intended to buy for the landfill. Instead, Pro–Eco had only an option to buy the property. Pro–Eco argues that, even if it did not have a compensable property interest in the land itself, its option to buy the land amounted to a compensable property interest.

Pro–Eco analogizes its posture to that of the plaintiffs in *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), where the Nollans, lessees with an option to purchase land, wanted to build on the land in order to satisfy their obligation under the option so they could buy the land. The California Coastal Commission conditioned a building permit on the Nollans' grant of an easement across a strip of the land to afford the public a better view of, and better access to, the beach. The Nollans protested the condition and began the arduous journey of appeals, writs, hearings, etc. either to have the condition struck or to make the government pay compensation. Eventually, a California Superior Court granted the Nollans' writ of mandamus and ordered that the condition be struck from the permit. The commission appealed to the California Court of Appeal, but, in the meantime, the Nollans built their house, thereby satisfying their obligation on the option, and purchased the land. The Court of Appeal reversed the Superior Court and also found that no taking had occurred because the easement would not deprive the Nollans of all reasonable use of their property. The U.S. Supreme Court reversed the California Court of Appeal and found a taking. *Id.,* 483 U.S. at 841, 107 S.Ct. at 3151.

Pro–Eco argues that, because it exercised its option to buy the land at issue at an earlier time in the litigation process than did the Nollans, we should conclude that Pro–Eco has an even stronger property interest than the Nollans had. The relevant inquiry for takings, however, is not whether a claimant acquires property early enough in the litigation process. It is whether the claimant had a recognized property interest at the time the government entity acted. When evaluating takings claims, courts look to the law of the state wherein the taking allegedly occurred to find whether what was allegedly taken was compensable property. *Ruckelshaus v. Monsanto,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984). The Nollans had a lease and an option when the California Coastal Commission acted. California recognizes a compensable property right in unexercised options to purchase real estate. *San Diego County v. Miller,* 13 Cal.3d 684, 693, 532 P.2d 139, 144, 119 Cal. Rptr. 491, 496 (Cal.1975). Indiana, apparently, does not.

Indiana courts have explicitly stated that an option to buy real estate "does not create in the ... optionee an interest in the property upon which recovery may be had after the same has been taken by eminent domain." *Haney v. Denny,* 135 Ind.App. 317, 335, 193 N.E.2d 648, 654 (Ind.Ct.App.1963); *see also Coons v. Baird,* 148 Ind.App. 250, 255, 265 N.E.2d 727, 731 (Ind.Ct.App.1970); *Butsch v. Swallow,* 78 Ind.App. 101, 106, 134 N.E. 877, 878 (Ind.Ct.App.1922).

Pro–Eco proposes no difference, and we conceive of none, between an option to purchase real estate that is frustrated by eminent domain proceedings and an option to buy land that is frustrated by a zoning regulation. Therefore, we conclude that, under Indiana law as indicated by *Haney, Coons,* and *Butsch,* Pro–Eco had no interest in the land at the time the ordinance passed.

But what about the option contract itself, apart from the real estate with which it is concerned: is it property in itself for which the owner must be compensated if its value is destroyed by a zoning regulation that goes too far? In *Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247 (7th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984), we denied the takings claims of parties to a multiemployer pension fund who challenged portions of the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) which required the employers, when they withdrew from the pension fund, to pay more into the fund than they had agreed among themselves to pay. In denying their takings claim, we relied on a Supreme Court statement in *United States v. Security Indus. Bank,* 459 U.S. 70, 75, 103 S.Ct. 407, 411–12, 74 L.Ed.2d 235 (1982), that, in the context of denying the takings

claims of creditors whose liens were impaired by the Bankruptcy Reform Act of 1978, the property right of a secured party to collateral is "quite different in legal contemplation" from the creditor's contract right to repayment of the debt. Collateral affords something closer to the bundle of rights we normally associate with property protected under the Takings Clause than a contract to be repaid. *Peick,* 724 F.2d at 1276. Accordingly, we concluded that the Supreme Court did not view the Takings Clause as protecting mere contract rights. *Id.*

In *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986), the Supreme Court noted that "the fact that legislation disregards or destroys existing contractual rights does not *always* transform the regulation into an illegal taking." (Emphasis added). *Connolly* was very similar to *Peick* in that the claimants were trustees to multiemployer benefit plans who alleged that the MPPAA took their property by forcing them to pay more when withdrawing from a plan than they had agreed among themselves to pay. *Connolly* stated that, "If the regulatory power is otherwise within the power of Congress ... its application may not be defeated by private contractual provisions," and therefore such contractual provisions, even if destroyed by the regulation, do not always entitle the parties to compensation from the government. *Id.* The Court would not say that contractual rights are never property,[2] but it

did not find them compensable in *Connolly,* where the United States took nothing for its own use and Congress nullified a contractual provision only by acting within its powers. *Id.,* 475 U.S. at 224, 106 S.Ct. at 1025–26.[3]

Indiana will not even go so far as to say that an option to buy property is a regular contract; instead, "it is a proposition by one party, for consideration, which must be accepted within the specified time, in the precise terms named, before it becomes a binding contract." *Haney,* 135 Ind.App. at 335, 193 N.E.2d at 654; *see also Coons,* 148 Ind. App. at 255, 265 N.E.2d at 731; *Butsch,* 78 Ind.App. at 106, 134 N.E. at 878 (noting that "It has been many times held that an option to purchase gives no right of property in and to the thing which is the subject of the option. It is not a sale. It is not even an agreement for a sale.").[4]

Given Indiana's decision that options to buy real estate do not create property rights in real estate (and the U.S. Supreme Court's position on the status of contracts under the Takings Clause), we conclude that Pro–Eco's option to buy real estate in Jay County is not a property interest protected by the Takings Clause. Allowing Pro–Eco to proceed with a takings claim based on its option to buy land would frustrate Indiana's policy of holding such option holders at arm's length from the land the option concerns. Indiana does not see fit to protect holders of options to buy land against others who claim an interest in

**2.** We read *Connolly,* in conjunction with the line of authority stating that we should look to states to find property rights under the Takings Clause, as effectively overruling, if it had not already been overruled, *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1933), to the extent that it flatly holds that contracts are property that the government may not take without compensation. *Lynch* dealt with War Risk Insurance policies, policies through which the United States insured the lives of veterans. Congress repealed the policies, but the Court allowed the petitioners to proceed with claims that they had been deprived of the value of their contracts without due process. The Court appeared to collapse the due process and takings issues in light of the fact that the government was a party to the contract, resulting in what looks more like a suit for breach of contract. The *Lynch* analysis does not resemble the takings jurisprudence of today, and, in light of *Connolly,* we do not believe it controls.

**3.** The *Connolly* Court then went on to engage in the sort of analysis that Pro–Eco advocated here, one encompassing an evaluation of the regulation's economic impact on the claimant's "distinct investment-backed expectations." *Id.,* 475 U.S. at 225, 106 S.Ct. at 1026. However, that analysis assumed for the sake of discussion some degree of property rights in order to show that the petitioners could not fulfill other necessary elements of a takings claim. We feel no need to do the same.

**4.** Indiana does recognize, however, that the owner of land has a legally enforceable obligation to contract to sell his land to the option holder upon the election of the option holder to fulfill its obligations under the option. *Romain v. A. Howard Wholesale Co.,* 506 N.E.2d 1124, 1127 (Ind. Ct.App.1987).

the land, so we should not grant Pro–Eco more rights through the back door of recognizing its option contract as property for purposes of the Takings Clause, especially when Indiana does not even recognize options as full-fledged contracts.[5] In short, the Board did not "interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute 'property' for Fifth Amendment [Takings Clause] purposes." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124–25, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978).

Moreover, we will not allow Pro–Eco to contract away the Board's right to develop a zoning plan. *See Connolly*, 475 U.S. at 224, 106 S.Ct. at 1025 (noting that "[i]f the regulatory statute is otherwise within the powers of Congress ... its application may not be defeated by private contractual provisions"). Pro–Eco rightly asserts that the Board acted outside of its powers in enacting the moratorium. However, the Board acted outside of its powers only in that it did not follow the proper procedures prescribed by the Indiana legislature. Pro–Eco does not challenge the Board's authority to enact a moratorium if it follows the proper procedures, and indeed the Board has the authority to enact zoning moratoria. *See* IND.CODE ANN. § 36–7–4–601(a) (West 1994) (granting the body with jurisdiction over a geographic area the exclusive authority to enact a zoning ordinance); *see also Penn Central*, 438 U.S. at 129, 98 S.Ct. at 2661 (recognizing that municipalities

may generally enact land use controls to enhance the area's quality of life).

The Board here was in much the same position as Congress was in *Connolly*, acting within its substantive powers, not appropriating any property for the government's use. If local governments had to pay compensation for every contract they frustrated when enacting ordinances within their substantive powers, localities would eventually lose their abilities to govern themselves. *See Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922) (noting that "Government could hardly go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.")[6]

Pro–Eco also alleges a taking occurred during the period after it bought the property but before the moratorium was invalidated, a time during which Pro–Eco was stymied in its efforts to develop the property as it wished. The Takings Clause does cover temporary takings for the period before an invalid land use control is struck down. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, Cal.*, 482 U.S. 304, 318, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987). However, the plaintiff in *First English* already owned the land affected before Los Angeles County enacted the ordinance that temporarily took it. Here, Pro–Eco has deliberately run into the Board's fist. Pro–Eco knew at the time it bought the land that the Board's ordinance would hinder their efforts to develop the land however they wished, even if only temporari-

---

**5.** Grasping for any sort of property rights, Pro–Eco also alleges that Indiana recognizes a "right to do business," which Pro–Eco wants us to extrapolate into a property right compensable under the Takings Clause (it cites no Indiana cases doing so). Regardless of whether Indiana recognizes such a right in the abstract, we will not override Indiana's explicit proscription against asserting options as property rights under the Takings Clause with Pro–Eco's assertion of a nebulous substantive right that, apparently, has no basis in any traditional notions of property rights.

**6.** In the analogous arena of due process, where property rights are generally broader, see *infra* at 513, the Supreme Court has declined to find a property right belonging to nursing home patients where the government rescinded the li-

cense of the nursing home: the patients were merely indirect beneficiaries of the government certification of the home. *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). The Court declined to find a property right partially because of the unpredictability of the number of property interests such a finding would create. *Id.* The same problem exists with regard to Pro–Eco's option to buy land. Pro–Eco's option contract is analogous to the nursing home patients in *O'Bannon* in that Pro–Eco benefits only indirectly from the landowner's right to the land in fee simple. We find troublesome the unpredictable number of beneficiaries of someone else's fee simple that might claim compensation from the government if we were to recognize a blanket compensable property right in contracts.

ly. In *In Re Thompson*, 867 F.2d 416, 422 (7th Cir.1989), where we denied a bank's claim that a congressionally enacted lien avoidance statute took the bank's security interest, we noted that

> lien avoidance is not a taking when it is authorized *before* the creditor makes the secured loan in question. . . . There is no taking when the creditor is simply told that if he extends security to a borrower who later goes bankrupt, he may not be able to enforce his security interest to the hilt. He can protect his security by reducing the amount of the loan or refusing to deal with borrowers who are not fully creditworthy; he can demand compensation for the added risk by charging a higher interest rate; he can demand additional collateral; or he can take some combination of these self-protective measures. In effect he can arrange compensation in advance for the taking of his security interest; he has no need to invoke the protection of the just-compensation clause of the Fifth Amendment.

*Id.* at 422.

■ The *Thompson* analysis applies here. While the landfill moratorium may have diminished the land's value to Pro–Eco, Pro–Eco could have arranged compensation in advance by paying less for the land. If Pro–Eco thought it would not be able to develop the property as a landfill because of the ordinance, then it surely valued the property less, paid a proportionately smaller amount, and must have seen some other value in owning the land. If, on the other hand, Pro–

Eco fully expected the ordinance to be invalidated, Pro–Eco likely paid the price at which it valued the land for use as a landfill less a discount for the hassle and delay that it would endure in taking action to invalidate the ordinance. To allow Pro–Eco further compensation under the Takings Clause would overvalue the land.[7] *Thompson* explicitly refused to rule that no prospective curtailment of property rights would ever violate the Takings Clause. *Id.* But we will not allow Pro–Eco to pursue compensation from the Board when Pro–Eco could have averted any diminution in value the moratorium inflicted upon the land.[8]

### B. 42 U.S.C. § 1983 Claims

Pro–Eco next alleges that it has a cause of action against the Board under 42 U.S.C. § 1983. According to Pro–Eco, the Board, in enacting the invalid moratorium, deprived Pro–Eco of its rights to procedural due process, substantive due process, and equal protection, all guaranteed by the 14th Amendment to the Constitution.

### 1. "Procedural" Due Process

■ The 14th Amendment protects persons from state governmental deprivations of life, liberty, or property without due process of law. U.S. CONST.AMEND. 14. Pro–Eco asserts that the Board deprived it of a property interest and argues as if it had a property interest in the land at the time the Board acted. As our discussion above noted, Pro–Eco had no property interest in the land or in its option to buy the land for purposes of

---

**7.** In the context of eminent domain proceedings, courts have noted that "Generally, only persons with ownership interests at the time of the taking are entitled to compensation for a taking." *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658–9 (9th Cir.1992); *Milens of Cal. v. Richmond Redevelopment Agency*, 665 F.2d 906, 909 (9th Cir.1982).

**8.** As another theory for asserting a property interest, Pro–Eco alleges that it spent in excess of $200,000 on development work on the land it eventually bought before the board enacted the moratorium. Such expenditures, Pro–Eco argues, show that it had a distinct, investment-backed expectation in developing the land, as the Supreme Court has required in order for a taking to occur. *Penn Central*, 438 U.S. at 124, 98 S.Ct.

at 2659. A distinct, investment-backed expectation, however, is not a substitute for the ownership of compensable property; it is a factor supplemental to the ownership of compensable property that courts should consider in deciding whether a taking has occurred. *See id.*, 438 U.S. at 124, 98 S.Ct. at 2659 (describing as a relevant consideration in examining whether a regulation amounts to a taking, where the claimant owned the land affected by the regulation, "the extent to which the regulation has interfered with distinct investment-backed expectations."). And allowing this theory of property would be tantamount to recognizing a constitutionally created compensable property right, which we may not do under the Takings Clause. *See Ruckelshaus*, 467 U.S. at 1001, 104 S.Ct. at 2872 (noting that we look to state law for protected property rights).

the Takings Clause. But, property as contemplated by the Takings Clause and property as contemplated by the Due Process Clause cannot be coterminous. If they were, we would end up with former welfare recipients whose benefits the state had otherwise properly ended claiming that the state must pay them the fair market value of their benefits. *See Goldberg v. Kelly*, 397 U.S. 254, 255, 90 S.Ct. 1011, 1013, 25 L.Ed.2d 287 (1970) (holding that welfare benefits may not be taken away without giving the recipient notice and an opportunity to be heard); *Schroeder v. City of Chicago*, 927 F.2d 957, 961 (7th Cir.1991) (concluding that the Takings Clause does not apply to allegedly improper removal of welfare benefits). The Due Process Clause, then, recognizes a wider range of interests as property than does the Takings Clause. However, even assuming that Pro–Eco's option could be construed as property under the Due Process Clause and that the Board's action somehow deprived Pro–Eco of the value of its option, Pro–Eco cannot show that it was deprived of due process.

 The Board is an elected body that acted legislatively in enacting the moratorium. It did not deny Pro–Eco a permit or variance; rather, it enacted a generally applicable ordinance. Governing bodies may enact generally applicable laws, that is, they may legislate, without affording affected parties so much as notice and an opportunity to be heard. *Bi–Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915). "The fact that a statute (or statute-like regulation) applies across the board provides a substitute safeguard." *Philly's v. Byrne*, 732 F.2d 87, 92 (7th Cir.1984) (citing *United States v. Florida East Coast Ry.*, 410 U.S. 224, 245–46, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973)). It is likely, as Pro–Eco asserts, that the Board acted specifically because it saw Pro–Eco's landfill coming, and we have noted that "more [process] may be required ... where the legislation affects only a tiny class of people—maybe a class with only one mem-

ber." *Philly's*, 732 F.2d at 93. The Supreme Court, however, has held that even the functional equivalent of a petition for a variance may be put to a referendum. *City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 679, 96 S.Ct. 2358, 2365, 49 L.Ed.2d 132 (1976). We do not believe that generally applicable prophylactic legislation provoked by the fear of one particular actor converts an elected body's legislative act into a quasi-judicial or administrative act that would require more process.[9] *See Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301, 1306 (10th Cir. 1973) (finding no adjudication, and therefore no need for an individual hearing, where a general rule applied to a class that included only one member but remained open to possible future members and there was such a community of interest in the regulation as to make rulemaking effective).

But we need not decide how little process the Board could have given here; Pro–Eco admits that it knew of the public hearing the Board held to discuss and adopt the moratorium and that a Pro–Eco representative attended that hearing. It does not allege, moreover, that its representative was denied an opportunity to speak. This is all "that due process in zoning could possibly be thought to require...." *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 469 (7th Cir.1988).

Pro–Eco insists that, because the Board allegedly did not follow the state statutes providing for public hearings, notice of those hearings, and Advisory Plan Commission input to be given to a Board of Commissioners when it promulgates zoning ordinances, it necessarily denied Pro–Eco, and presumably anyone who had their property values diminished by the moratorium, due process because there was no meaningful opportunity for interested parties to be heard on the matter. According to Pro–Eco, only if the Jay County Advisory Plan Commission had reviewed the proposed moratorium and given the Board input could Pro–Eco have had a meaningful opportunity to be heard.

---

**9.** If an ordinance professed general applicability, but it were so specific in describing the prohibited acts that only one actor could ever come within its purview, the ordinance might amount to a bill of attainder and no manner of process would be sufficient. U.S. Const. Art. I § 10; *Falls v. Town of Dyer, Ind.*, 875 F.2d 146, 147 (7th Cir.1989).

■ This is incorrect. The Constitution does not guarantee anyone the right to a master land use plan proposed by an advisory plan commission before a zoning moratorium can be enacted. Or, more generally, "A violation of state law is not a denial of due process of law." *Coniston*, 844 F.2d at 467; *see also River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir.1994). Pro-Eco has already gotten relief for the Board's violation of the state procedural statute in the form of invalidation of the ordinance. Section 1983 affords relief only if the Constitution is offended, and a violation of a state procedural statute does not offend it.

## 2. "Substantive" Due Process

■ Pro-Eco also claims that the Board's ordinance deprived Pro-Eco of its substantive due process rights. In order to claim that a zoning ordinance interferes with its substantive rights, Pro-Eco must be able to demonstrate either that the ordinance infringes a fundamental liberty interest, *Reno v. Flores*, — U.S. —, —, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993), or that the ordinance is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). We have interpreted "arbitrary and unreasonable" to mean invidious or irrational. *Coniston*, 844 F.2d at 467; *Burrell v. City of Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987).

In *Mid-American Waste Sys., Inc. v. City of Gary, Ind.*, 49 F.3d 286 (7th Cir.1995), we noted that "[d]epositing garbage in landfills is not exactly a fundamental right.... Disposition of waste is a highly regulated industry. A claim that the Constitution protects this industry from public control ... would bring nothing but belly laughs." *Id.* at 291. Moreover, "[c]orporations do not have fundamental rights ...;" "fundamental rights," a category that may include the liberty to contract, *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), describes only personal liberties.

*Mid-American*, 49 F.3d at 291 (citation omitted).[10] So much for Pro-Eco's first avenue of recovery under the theory of substantive due process.

The Board's moratorium stated that "the construction and operation of public or commercial sanitary landfills constitutes a use of property that may create serious, permanent, and irreversible environmental damage and may unnecessarily endanger the public health, safety, or welfare of the citizens of Jay County, Indiana...." The ordinance went on to note the absence of any countywide protection from such pernicious use of the land. Concern for public health is a sufficient reason on its face to pass the *Euclid* test, and "governmental action passes the rational basis test if a sound reason may be hypothesized. The government need not prove the reason to a court's satisfaction." *Northside Sanitary Landfill, Inc. v. City of Indianapolis*, 902 F.2d 521, 522 (7th Cir. 1990) (citations omitted). In trying to protect the health, safety, and welfare of Jay County, the Board acted rationally; therefore, Pro-Eco's substantive due process rights claim must fail.

## 3. Equal Protection

■ Pro-Eco alleges that the moratorium violated its right to equal protection of the laws in two ways. First, it treated potential landfill developers differently than other developers. Because Pro-Eco does not claim to be a member of a suspect class whose different treatment at the hands of the government would be subject to strict or intermediate scrutiny, the same test of rationality we used for analysis of Pro-Eco's substantive rights claim applies to its equal protection claim. *Coniston*, 844 F.2d at 468. To state the standard in equal protection terms, as long as the Board had a rational basis for creating the classification and enacted the ordinance to achieve a legitimate government end, the moratorium satisfies the requirements of the Equal Protection Clause. *Cohen v. City of Des Plaines*, 8 F.3d 484, 494

---

10. Shareholders of corporations may allege that a regulation that hinders the corporation invalidly curbs the shareholders' fundamental liberties,

*Mid-American*, 49 F.3d at 291, but Pro-Eco litigates here as the corporation itself.

(7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994).

We have already determined that the Board's goal, to protect the health, safety, and welfare of Jay County from the irreversible and pernicious social costs imposed by landfills, is legitimate. And prohibiting anyone from developing a landfill in Jay County seems a fairly straight-forward, rational way to achieve that goal. Prohibiting all land development in Jay County would achieve the Board's goal, but it would also stifle other sorts of development, such as residential development, that the Board did not find pernicious.

But the moratorium was not rational in the eyes of Pro–Eco, who counters that the ordinance was irrational because, in enacting the ordinance, the Board deviated from state law and, therefore, had no reasonable expectation that the ordinance would be enforced. This characterization of the Board's act misses the mark: it does not address the rationality of the classification the Board drew. Moreover, if we bought this misdirected argument, we would negate our earlier proposition that violations of state procedural statutes do not amount to constitutional violations.

Pro–Eco's second basis for claiming an equal protection violation is that the Board singled out Pro–Eco for unfair and unequal treatment. Pro–Eco claims that the ordinance was unfair because it was apparently the only company with its eyes on developing a landfill in Jay County at the time the Board acted. Pro–Eco argues that unfair and purposeful discrimination in the enforcement of zoning regulations violates the Equal Protection Clause, citing *Scudder v. Town of Greendale, Ind.,* 704 F.2d 999, 1002–03 (7th Cir.1983). Indeed, it may violate the Equal Protection Clause when "the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him...." *Esmail v. Macrane,* 53 F.3d 176, 179 (7th Cir.1995); *see also Falls v. Town of Dyer, Ind.,* 875 F.2d 146 (7th Cir. 1989).

■ But Pro–Eco does not present us with a case of enforcement; it presents us with a case of enactment. Pro–Eco does not claim that the ordinance on its face applied only to it, or that other landfill developers were granted waivers and Pro–Eco was not. An ordinance generally applicable on its face but enforced for no legitimate reason against only an individual or a particular class may violate the Equal Protection Clause. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886); *Esmail,* 53 F.3d at 179–80; *Falls,* 875 F.2d 146. But legislatures may enact generally applicable legislation as a prophylactic to the danger posed by one particular actor as long as the end of the legislation is legitimate and, assuming the legislation does not distinguish between classes on bases susceptible to intermediate or strict scrutiny, the means are rationally related to the end. In other words, the fairness of which Pro–Eco speaks is always determined, in cases of low-level scrutiny, by the rationality of the state action, whether the questioned action is the enactment of an ordinance or the enforcement of it. The Board's action here, even if unabashedly directed at a threat only Pro–Eco posed, was legitimate.[11] Pro–Eco has not stated facts to support a claim that Jay County engaged in unequal enforcement of the ordinance. The Board did not violate the Equal Protection Clause.

## C. Indiana Tort Claim

■ Finally, Pro–Eco asserts a vague tort claim under Indiana law that it says guarantees Pro–Eco the "right to engage in a

---

11. Again, the ordinance applied to anyone who wished to develop a landfill, but Pro–Eco claims that it violated the Equal Protection Clause because Pro–Eco was the only entity, at the time the ordinance was enacted, wishing to engage in the proscribed activity. We recognize that an ordinance may contain language of general applicability and still violate the Equal Protection Clause without a showing of unfair enforcement. But such a case would only arise where 1) the language of the statute, while not identifying any individual by name, could apply only to one person, and 2) such a classification would not rationally relate to a legitimate governmental end. In other words, a law of general application will not be constitutional if it amounts to bill of attainder, which Art. I, § 10 of the Constitution forbids to the states. *Falls,* 875 F.2d 146 (7th Cir.1989).

lawful business." Whatever the viability of such a claim under Indiana law, Pro–Eco may not proceed with it because Indiana provides immunity for local government entities from liability for loss resulting from "the adoption and enforcement of or failure to adopt and enforce a law...." IND.CODE ANN. 34–4–16.5–3(7) (West 1995).

Pro–Eco argues that immunity does not apply because the Board acted outside of its statutory authority when it enacted the moratorium and that, therefore, the Board's action did not constitute discretionary authority. The Indiana Court of Appeals, in *Harvey v. Board of Comm'rs of Wabash County*, 416 N.E.2d 1296, 1299 (Ind.Ct.App.1981), read into adoption and enforcement immunity a requirement that the governmental entity act in a discretionary, rather than ministerial, capacity. It refused to find immunity for Wabash County against a lawsuit arising from an auto accident where the county decided to put up a road sign but failed to follow the legislatively prescribed quality control regulations when placing the signs. Once the county decided to place the signs, the *Harvey* court held, its discretionary functions ended, its ministerial functions began, and immunity fell away: "The question is 'Did Wabash County break the law?' Not 'Did Wabash County make the law?'." *Id.* at 1299.

The Indiana Supreme Court has modified adoption and enforcement immunity analysis, however. Now, instead of discerning between discretionary and ministerial functions, courts decide whether the allegedly tortious conduct was planning (immunity) or operational (no immunity) in nature. *Peavler v. Monroe County Bd. of Comm'rs*, 528 N.E.2d 40, 46 (Ind.1988). There, the court noted that "Tort immunity for basic planning and policy-making functions is necessary to avoid the chilling effect on the ability of the government to deal effectively with difficult policy issues which it confronts daily." *Id.* at 44. Those functions ought to be immune which involve "the exercise of political power which is held accountable only to the Constitution or the political process." *Id.* at 45 (citation omitted).

There may be cases where an elected governmental body decides through an immune, executive-style planning process to adopt a policy, and then becomes a potentially liable, operational body in carrying out its policy. But the adoption of an ordinance through a legislative process, even if it runs afoul of higher authority in some procedural manner, is a basic planning and policy-making function that should not be chilled by the prospect of common law tort liability. The most that could be said for the operational (or ministerial) functions of the Board here is that they merged with the Board's discretionary functions into one action. We believe that the policy making capacity of the Board should control. That does not mean that ordinances enacted in violation of higher authority should stand, but remedies other than tort liability exist to strike down problematic laws, such as the remedy of declaratory judgment Pro–Eco obtained here. And, ultimately, the political process is the best remedy of all against an elected body.

### III. Conclusion

For the foregoing reasons, the district court is

AFFIRMED.