## SUPERIOR–FCR LANDFILL, INC., Plaintiff,

v.

## COUNTY OF WRIGHT, Defendant.

### No. CIV. 98–1911 (JRT/FLN).

United States District Court,
D. Minnesota.

Aug. 6, 1999.

Robert E. Cattanach and Michael R. Drysdale, Dorsey & Whitney, Minneapolis, MN, for plaintiff.

Clifford M. Greene, Larry D. Espel and John M. Baker, Greene Espel, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Plaintiff Superior FCR Landfill, Inc. ("Superior") brought this action against Wright County ("the County") asserting a number of federal and state-law claims. Superior owns a landfill within the County that it had sought to expand to an adjoining piece of property. It alleges that the County's enactment of zoning regulations combined with activities—in an attempt to monopolize the landfill market within its borders—violates federal antitrust laws, constitutes a taking under both the state and federal constitutions, and contravenes the "dormant Commerce Clause." In addition, Superior claims that the County acted tortiously by delaying acceptance of a conditional use permit ("CUP") application and that the County's wrongful conduct estops it from enforcing its zoning regulations in these circumstances.

This matter is before the Court on the County's motion for dismissal of Superior's takings claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and summary judgment on all claims pursuant to Rule 56. Because the County has now made a "final decision" regarding Superior's pending rezoning application, the takings issues are ripe for review and, hence, the Rule 12(b)(1) portion of its motion must be denied. For the reasons set forth below, the County's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

In 1990, the County commissioned a $14 million composting facility. Superior alleges that, after this decision, the County began undertaking a series of measures to destroy competition for waste within the County. In 1992, the County implemented an interstate designation ("Waste Designation Ordinance"), which required all waste

generated within the County to be delivered to the composting facility. Shortly thereafter, it modified the ordinance by adopting an "in-state" designation, which exempted all county waste that crossed state lines, but still required all other waste to be delivered to the County's compost facility. According to Superior, the County soon realized that this modification—which allegedly was adopted to make the regulation less conspicuously unconstitutional under the dormant Commerce Clause—did not succeed in generating revenue for the facility. Superior further claims that, as a result of these previously unsuccessful attempts to make the composting facility viable, the County turned to "confiscatory zoning" as a means of preventing competition.

Superior purchased its landfill in 1994. By 1996, the landfill was the last in the County and was approaching the limit of its permit capacity. On January 12, 1996, Superior entered into an agreement, entitled "Option Agreement," to buy an adjoining farm. The relevant provisions of this agreement are as follows:

In consideration of the payment by Purchaser to Seller of the sum of Ten Thousand Dollars ("10,000.00") upon the signing hereof and the mutual covenants and agreements set forth herein, the parties agree as follows:

1. Option. Seller hereby grants Purchaser the option to purchase [the farm] . . . .

2. Option Price. If Purchaser exercises its option to purchase the Property, the purchase price shall be [$575,000.00], payable in case at the closing (the "Purchase Price"). The amounts paid by Purchaser as consideration for the option granted by this Agreement shall be credited against the Purchase Price. The amounts paid as consideration for the option granted by this Agreement shall not be refundable if the option is not exercised.

3. Exercise of Option. Purchaser may exercise the option to purchase the Property at any time on or before December, 31, 1996. The option shall be exercised by delivery of written notice to Seller and payment of the Purchase Price, as provided above, and may be extended for four (4) years total, by receipt of payments according to the following schedule . . . .

All additional payments shall be treated as provided in Item 2, above.

Purchaser agrees to use its best efforts to obtain the permits necessary to operate a solid waste disposal facility on the Property in as expedient a manner as possible. The parties acknowledge, however, that although the process involved in permitting and developing the Property for use as a solid waste disposal facility generally takes approximately 3½ years, there may be circumstances beyond Purchaser's control that may delay the issuance of the necessary permits. "Best efforts" shall include giving first priority to the licensing of this location with others adjoining the present fill site.

4. Closing. Closing shall take place at a time and location specified by Purchaser in its exercise notice, no later than ninety (90) days after the necessary permits are received by Purchaser . . . .

According to Superior, its representatives formally notified the County in February 1996 that it intended to expand the landfill into the adjacent property. At the time, this expansion would have conformed to the County's zoning regulations. Superior alleges that, in response, County personnel twice instructed Superior that they would not accept any request for a CUP application until Superior had completed an environmental assessment worksheet

("EAW"). At that time, the County did not have a written policy regarding whether it could refuse to accept or consider a CUP application based on a pending EAW. Superior alleges that this refusal was a willful attempt by the County Board of Commissioners ("County Board") to thwart Superior, or at least a negligent refusal by the County's staff.

On November 4, 1996, two weeks before Superior's EAW would be complete, the County enacted a one-year moratorium on ten categories of development, including landfill expansion. In October, 1997, the County extended that moratorium. The County gathered information regarding these categories of development during the moratorium period. In March 1998, the County enacted a new zoning ordinance ("New Zoning Ordinance") restricting all waste handling to specified districts that effectively precluded any possibility of Superior's expansion. On August 12, 1998, Superior exercised its option to purchase the adjoining farm, even though landfill is neither a permitted nor conditional use for that site under the New Zoning Ordinance.

Superior filed applications with the County for rezoning and a variance, seeking the expansion under the current ordinance. Without awaiting the outcome of those applications, Superior brought this lawsuit. On April 6, 1999, after the County's motion had been briefed and argued, the County Board issued a final decision denying the applications.

After receiving approval from the Magistrate Judge, Superior filed a Second Amended Complaint in May 1999. The Second Amended Complaint alleges new claims, including *inter alia*, violations of state zoning laws and violation of substantive due process under the Constitution. The Court need not consider these new claims in addressing this motion.

## ANALYSIS

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment, stating in pertinent part:

[Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in the light most favorable to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where a moving party makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995).

### II. Antitrust Claim

■ Superior contends that the County repeatedly has violated the Sherman Antitrust Act, 15 U.S.C. §§ 2 *et seq.*, by engaging in a pattern of monopolistic conduct in an attempt to monopolize the solid waste disposal services within its borders.

There is no dispute that municipalities such as counties generally are not immune—and certainly are not "directly" immune—from suits for injunctive relief under the Sherman Act. *See, e.g.,* 15 U.S.C. § 35; *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 38, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985) ("Municipalities ... are not beyond the reach of the antitrust laws by virtue of their status because they are not themselves sovereign."). However, the County argues that its planning and zoning activities are exempt from antitrust scrutiny under the "state action doctrine," most recently articulated by the Supreme Court in *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 373–74, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). The Court agrees with the County that the state action doctrine bars Superior's antitrust claim.

Under *Omni,* a municipality's conduct is immune from antitrust scrutiny if the state granted the municipality both the 1) authority to regulate and 2) the authority to suppress competition. *Id.* at 372–73, 111 S.Ct. 1344. To satisfy the second prong, the municipality's acts must be the "foreseeable result of the state authorization." *Id.*

Superior contends that the County's attempts at monopolization through "confiscatory" zoning fail to satisfy both prongs of the *Omni* test because the State of Minnesota has not directly authorized the erection of local monopolies of waste disposal services and because the County's actions in these circumstances cannot be considered a "foreseeable result" of the

state's delegation of general zoning authority. The Court rejects these arguments. Regardless of the County's intent, the conduct that has substantially harmed Superior's ability to compete is the County's exercise of zoning powers, which the State of Minnesota has expressly authorized counties to perform. *See* Minn.Stat. §§ 394.21, 394.24, 394.25, and 394.34.

Turning to the second prong, *Omni*'s analysis makes clear that a grant of zoning authority has the foreseeable result of restricting competition. Indeed, the Court stated that "[t]he very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition ...." *Omni,* 499 U.S. at 373, 111 S.Ct. 1344. Moreover, while *Omni*—which involved zoning restrictions on billboards—is factually distinct from this case, Superior does not dispute that the state grant of zoning authority at issue there was no more specific than the one here.[1] *Compare Omni,* 499 U.S. at 371 n. 3, 111 S.Ct. 1344. (quoting S.C.Code Ann. § 5–23–10) *with* Minn.Stat. §§ 394.21, 394.24, 394.25, and 394.34.

Superior further argues that the Court should carve out an exception to the principle in *Omni* where, as here, the county is a market participant. *Omni* recognized the possibility of such an exception in dicta, stating that "this immunity does not necessarily obtain where the State acts not in a regulatory capacity but as a commercial participant in a given market." *Omni,* 499 U.S. at 374–75, 111 S.Ct. 1344. The Court believes that there are strong arguments

---

1. Superior argues that because the County offers no direct authorization for the erection of a local monopoly in the delivery of waste disposal services, its activities do not "necessarily and reasonably" result from engaging authorized activity. *See Paragould Cablevision v. City of Paragould,* 930 F.2d 1310, 1313 (8th Cir.1991) (stating that local governments can "defeat antitrust challenges only if the anticompetitive consequence necessarily and reasonably results from engaging in the authorized activity"), *cert. denied,* 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991).

Again, however, the County's zoning activities (not its building a compost facility) are what deprived Superior of the ability to compete, and *Omni* expressly recognized that such activities satisfy the foreseeability prong.

Also, *Bloom v. Hennepin County,* 783 F.Supp. 418, 421–22 (D.Minn.1992), is inapposite because it involves municipal conduct unrelated to zoning. Indeed, Superior cites to no case in which a court has found that a local government's exercise of zoning authority fails to satisfy the *Omni* test.

to support such an exception. Moreover, it is unpersuaded by the County's contention that the market participant exception would not apply here because the County is merely acting in a regulatory capacity. Zoning is a regulatory function, but the County became a participant in the solid waste market by building a composting plant to compete for waste.[2]

Nevertheless, the Eighth Circuit has rejected the market participation exception expressly, at least until it has a more definitive statement from the Supreme Court. *See Paragould Cablevision,* 930 F.2d at 1313. Given the Eighth Circuit's guidance on this issue, which this Court is obliged to follow, Superior's market participant argument must fail. The County therefore is entitled to summary judgment on Superior's antitrust claim.

### III. State and Federal Takings Claims

■ Superior must exhaust all of its state-law remedies before seeking remedies for an alleged taking under the United States Constitution. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *McKenzie v. City of White Hall,* 112 F.3d 313, 317 (8th Cir.1997). Because the County has issued a final decision denying Superior's rezoning application, Superior's takings claim under the Minnesota Constitution is ripe for review. The Court exercises supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a). If the Court determines that Superior is not entitled to relief under state law, it then may address the federal claim.

■ Superior does not dispute that it purchased the subject property after it had notice of the New Zoning Ordinance. It also agrees that those who purchase property with an awareness of the restrictions on its use cannot claim that a taking has occurred. *See, e.g., Myron v. City of*

*Plymouth,* 562 N.W.2d 21, 23–24 (Minn.Ct. App.), *aff'd,* 581 N.W.2d 815 (Minn.1998); *see also Minnesota v. Modern Box Makers, Inc.,* 217 Minn. 41, 13 N.W.2d 731, 735 (1944) (rejecting plaintiff's challenge to a zoning ordinance because the ordinance was in effect prior to plaintiff's purchase of the property). To avoid the preclusive effect of this "self-imposed hardship" rule, Superior argues that it acquired a property interest in the parcel before the County's enactment of the laws that took its value. Specifically, Superior contends that the Option Agreement was not a simple option agreement, but rather was a "contingent purchase agreement" contingent on the receipt of certain permits. Thus, according to Superior, it was the equitable owner of the property on the date that the Option Agreement was signed, which was prior to County's enactment of the New Zoning Ordinance.

■ As an initial matter, the Court notes that the interpretation of the meaning of a contract is a question of law where the terms contained therein are clear and unambiguous. *See, e.g., Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979); *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 886 (Minn.1978). Thus, contrary to Superior's assertion, whether the Option Agreement embodies a true option agreement or a contingent purchase agreement is not a question of fact precluding the possibility of summary judgment.

■ Turning to the contract language, a plain reading of the Option Agreement belies Superior's contention that it is really a contingent purchase agreement. The first numbered paragraph of the agreement—which, along with other relevant provisions, is set forth above—unambiguously provides that "Seller hereby grants Purchaser the option to purchase." In addition, the term "option" appears throughout the agreement and is always unqualified. Indeed, the presence of dis-

---

2. This fact would distinguish this case from *Omni,* in which the alleged competitors that gained advantages were private parties that already owned billboards. *See id.*

cretionary language around the term "option" clearly suggests that this is a true option agreement; for example, paragraph two begins "*If* Purchaser exercises its option to purchase the Property," and paragraph three states "Purchaser *may* exercise the option to purchase the Property at any time." [3]

The Court rejects Superior's assertion that this instrument should be construed as a contingent purchase agreement because it provides that Superior must use its "best efforts" to obtain certain permits necessary to operate a solid waste disposal facility on the property and because it specified that the closing date shall be "no later than ninety (90) days after the necessary permits are received by Purchaser." The best efforts provision, while stated in mandatory language, requires diligence on Superior's part, but it in no way modifies or qualifies Superior's discretion in determining whether to exercise its option. Likewise, the closing date provision does not require Superior to exercise the option upon receipt of the permits; it merely provides a deadline if permits are received *and* if Superior exercises its option. Thus, the Option Agreement is true to its name.

Superior's option to buy the subject property did not create a "property" interest. *See, e.g., City of Shakopee v. Clark,* 295 N.W.2d 495, 497–98 (Minn.1980) (recognizing that an optionor acquires an equitable interest in land "[o]nce a contract option has been exercised"); *see also Pro–Eco, Inc. v. Board of Comm'rs,* 57 F.3d 505, 509 (7th Cir.) (holding, under Indiana law, that a plaintiff with the option to buy land had no property interest in the land for purposes of determining whether there had been a taking), *cert. denied,* 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995). Because the option is not a recognized property interest, it cannot form the basis of a takings claim. *See, e.g., Pro–*

*Eco,* 57 F.3d at 507 (holding that the relevant inquiry for takings is "whether the claimant had a recognized property interest [in the property] at the time the government entity acted"); *see also Northern Border Pipeline Co. v. 86.72 Acres of Land,* 1998 WL 698935, at *2 (N.D.Ill. 1998) (holding under Illinois law that an option to purchase does not create an interest in land entitling the holder to compensation after a taking). Likewise, Superior did not become entitled to takings relief once it exercised its option to purchase the property, because that decision created a true "self-imposed hardship." Superior's state-law takings claim therefore fails as a matter of law, as does its federal claim. *See, e.g., Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (indicating that state law governs whether there is an enforceable property right). Both claims therefore are dismissed.

## IV. Dormant Commerce Clause Claim

The County argues that Superior's dormant Commerce Clause claim should be dismissed as untimely under the applicable six-year statute of limitations.[4] Specifically, the County contends that Superior's claim is a facial challenge to the validity of the County's 1992 Waste Designation Ordinance, and as such, it is barred because it was not brought within six years of enactment. Superior responds that the claim is not time barred—for damages for injuries inflicted after August 19, 1992, six years prior to filing this suit—because the continued diversion of waste to the composting facility pursuant to the Waste Designation Ordinance constitutes a continuing violation.

 A continuing violation is "occasioned by continual unlawful acts," not con-

---

**3.** Moreover, the agreement recognizes that Superior was to pay $10,000 (plus additional amounts for extensions) "in consideration for the *option.*"

**4.** It is undisputed that the six-year statute of limitations for claims brought under 42 U.S.C. § 1983 is applicable.

tinued ill effects or harm from an original violation. *National Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir.1991) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981)); *see also United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (stating that the continuing negative impact of an action that violates plaintiff's rights is insufficient to show a present violation). Thus, to demonstrate a continuing violation, a plaintiff must establish that the unconstitutional or unlawful conduct was a continuing practice. *See, e.g., National Adver.*, 947 F.2d at 1166. Some type of continuing violative *action or conduct* within the statutory period therefore is required.

■ At this point, Superior has offered no evidence demonstrating that the County has engaged in a continuing violation. First, the mere fact that the ill-effects of the Waste Designation Ordinance continued to injure Superior after its enactment does not establish a continuing *violation. See, e.g., Evans*, 431 U.S. at 558, 97 S.Ct. 1885. In addition, the Court rejects Superior's contention that the statute of limitations began anew for its dormant Commerce Clause claim "each day that waste was diverted to the compost facility." The issue is whether the County has taken any affirmative steps during the relevant period to divert the waste. While the composting facility has received compost in the last six years, that fact alone does not create a continuing violation of dormant Commerce Clause; Superior must show actual acts of interference that have harmed its business.

Superior points to no other act or conduct by the County—separate from the existence of the Waste Designation Ordinance itself—that has diverted waste to the compost facility during the statutory period, or diverted waste away from its landfill. The absence of evidence of an affirmative act on the part of the County during the statutory period distinguishes this case from all of the continuing viola-

tion cases on which Superior relies to support its theory. *See, e.g., Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 118 S.Ct. 542, 552–53, 139 L.Ed.2d 553 (1997) (finding that separate acts of missing successive payments constituted a separate cause of action with its own statutory period); *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir.) (applying continuing violation doctrine in a § 1983 action involving discrimination, where an ongoing practice of discrimination involved acts within the limitations period), *cert. denied*, —— U.S. ——, 118 S.Ct. 298, 139 L.Ed.2d 229 (1997); *Tiberi v. CIGNA Corp.*, 89 F.3d 1423, 1430 (10th Cir.1996) (concluding that the continuing violation doctrine applied because defendant's last act of fraud occurred within the limitations period); *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 168 (8th Cir.1995) (en banc) (holding that each new delivery of a discriminatory paycheck to a female employee constitute a new cause of action).

Superior suggests that it will be able to gain evidence through discovery showing that the County has taken affirmative steps to divert waste to the compost facility during the limitations period. It therefore contends that this motion is premature. Once Superior realized that it could not respond to the County's motion with specific facts demonstrating the existence of a dispute of material fact without undertaking additional discovery, it should have filed an affidavit under Rule 56(f) explaining how discovery would enable it to overcome the motion. Nevertheless, recognizing that this motion was filed at an early stage of the proceedings, the Court will refrain from dismissing this claim at this point to allow Superior the opportunity to conduct discovery on this issue. The County may file an additional motion for summary judgment if, after the parties have had the opportunity to conduct discovery, it believes Superior has no evi-

dence of a continuing violation.[5] The Court therefore denies without prejudice the County's summary judgment motion as to this claim.[6]

## V. State-law Tort and Estoppel Claims

Superior asserts claims under Minnesota law for tortious interference with prospective business advantage, negligence, and estoppel. As an initial matter, Superior's estoppel claim is premised on the success of its antitrust claim, which the Court now has dismissed. That claim therefore fails as a matter of law.

■ The Court also finds that Superior's tortious interference and negligence claims do not withstand scrutiny. Superior bases these claims on the County's alleged bad faith or negligent refusal to accept CUP application (in June and September of 1996) while an EAW was being completed. The EAW process remained incomplete in early November 1996, when the County enacted the moratorium on landfills. As the County points out however, it was obligated under Minnesota law to require the environmental review process. See Minn. R. 4410.4400, subp. 13. During the pendency of this process, the County could not have granted the CUP to Superior. See Minn. R. 4410.3100, subp. 1 ("If an EAW or EIS is required for a

governmental action . . . a project may not be started and a final governmental decision may not be made to grant a permit, approve a project, or begin a project, until [the petition for an EAW is dismissed or a variance is granted].").

Thus, the County was bound by Minnesota law not to issue the CUP during the period Superior claims it should have. Obviously, the County did not commit a tort by depriving Superior of the opportunity to receive a CUP in contravention of Minnesota law.[7] These claims therefore are dismissed.

### ORDER

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendant's motion to dismiss and for summary judgment [Docket No. 10] is **GRANTED IN PART** and **DENIED IN PART.**

2. Defendant's motion is **GRANTED** as to plaintiff's antitrust (Count III of the Amended Complaint), takings (Counts IV and V), tortious interference (Count VI), negligence (Count VII), and estoppel (Count VIII) claims, and these claims—regardless of how they are pleaded in the

5. The parties may, on a more complete record, revisit the various issues surrounding whether this claim is time-barred. Also, if, at some point during the litigation, Superior can no longer allege in good faith the existence of a continuing violation, it should voluntarily dismiss this claim.

6. Although the County initially contended that Superior's claim is a facial attack on the ordinance, it does not appear to dispute that Superior's claim would survive the limitations bar if Superior could demonstrate a continuing violation of its rights within the statutory period. The County does argue that the continuing violation doctrine does not apply, even if the County did take additional unconstitutional steps during the statutory period, because such additional steps would not cause injuries independent of the injuries the ordinance inflicted. See, e.g., Klehr v. A.O. Smith Corp., 87 F.3d 231, 239 (8th Cir.1996),

aff'd, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). At this point, the Court cannot rule out the possibility that the conduct of County officials after enactment of the ordinance may have caused independent harm—harm "over and above" the harm caused by the mere enactment of the ordinance. See Klehr, 117 S.Ct. at 1991 (requiring a new act that caused harm "over and above" the harm that the earlier acts caused). Superior may be able to demonstrate that County officials' acts of enforcement or diversion of waste caused Superior harm within the relevant period.

7. That the County did not have a written policy on refusing to accept CUP applications is immaterial, because, whether it should have had such a policy or not, it could not have issued a CUP to Superior prior to the completion of environmental review.

Second Amended Complaint—are **DIS-MISSED WITH PREJUDICE.**

3. Defendant's motion is **DENIED** in all other respects.