# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

New Albany Historic Preservation
Commission
**RACHELE L. CUMMINS**
**A. DAVID HUTSON**
Smith Carpenter Thompson Fondrisi
Cummins & Lewis, LLC
Jeffersonville, Indiana

City of New Albany
**SHANE L. GIBSON**
New Albany City Attorney
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**JOHN A. KRAFT**
**JENNIFER KRAFT KUCHLE**
Young Lind Endres & Kraft
New Albany, Indiana



FILED

Mar 22 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NEW ALBANY HISTORIC PRESERVATION COMMISSION and CITY OF NEW ALBANY, | ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 22A01-1108-PL-365 |
| BRADFORD REALTY, INC., | ) ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FLOYD CIRCUIT COURT
The Honorable Daniel E. Moore, Special Judge
Cause No. 22C01-0806-PL-409

**March 22, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Defendants, the New Albany Historic Preservation Commission and the City of New Albany (collectively, the NAHPC), appeal the trial court's summary judgment in favor of Appellee-Plaintiff, Bradford Realty, Inc. (Bradford), concluding that Bradford had not received due process when the NAHPC designated its property to be located in a historic district.

We reverse in part and affirm in part.

## ISSUES

The NAHPC presents four issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court erred by declaring the City of New Albany's ordinance designating Bradford's property located within the historic district as an adjudicative act instead of a legislative act and therefore requiring actual notice of the potential designation pursuant to the United States Constitution's due process provision; and

(2) Whether the trial court erred when it concluded that Bradford was not required to obtain a Certificate of Appropriateness when it replaced the property's original siding with vinyl siding.

On Cross-Appeal, Bradford presents us with one issue, which we restate as: Whether the trial court erred when it concluded that Bradford did not have a claim for inverse condemnation.

2

FACTS AND PROCEDURAL HISTORY

The City of New Albany (the City) is located on the Ohio River in southern Indiana. The City's downtown area is characterized by a collection of Federal and Greek Revival style commercial structures, built between 1814 and 1950, interspersed by residential and religious buildings. In 1999, the downtown district was included in the National Register of Historic Places.

That same year, in 1999, the City adopted a historic preservation ordinance pursuant to Ind. Code § 36-7-11 *et seq*. The ordinance clarified the powers and duties of the New Albany Historic Preservation Commission (HPC), instituted guidelines for the creation of historic districts, and elaborated on the procedures for modification and construction of structures within a historic district. The regulatory provisions of the ordinance require the property owner to request a Certificate of Appropriateness (COA) from the HPC prior to commencing work on most external modifications of a property located within the historic district. *See* New Albany Ord. § 151.06.

In 2002, the City proposed an ordinance to designate the downtown district as a historic district. On April 28, 2002, the City published a notice of public meeting on the issue of the proposed designation in the New Albany Tribune. The New Albany Tribune also ran two articles discussing the potential designation of the district in its April 25, 2002 and May 3, 2002 issue. The public meeting occurred on May 9, 2002. Neither the City nor the HPC gave actual notice of the hearing to the owners of property located within the proposed boundaries of the historic district. On July 1, 2002, the ordinance

3

designating the historic district was adopted by the City's Council and signed by the mayor the following day.

Bradford is the owner of property located within the historic district. The property was built in 1910 and is described in the National Register of Historic Places as

> a two and a half story frame house with a limestone clad foundation (up to a two foot height) with a vermiculated finish. The roof is hipped with wide eaves and a front dormer. The walls are wood clapboard. The front porch is at left, inset, with a tapered stone pier, also of vermiculated stone. There is a brick plinth and walls on the porch with concrete steps. The windows are one/over/one light, double hung.

(Appellant's App. p. 186). Bradford has owned the property since 1966 and uses it as income property, generating rental income. In 2008, Bradford decided to repair the exterior of the house and began to replace the original wood clapboard siding with "vinyl siding . . . of the same color and the approximate same width." (Appellant's App. p. 140). On February 26, 2008, the HPC sent a letter to Bradford notifying it that it needed a COA before proceeding with an exterior modification of the property. On March 18, 2008, Bradford responded indicating that since it had owned the property prior to the enactment of the historic district, it was not bound by its provisions. Despite an immediate reply from the HPC that Bradford was required to request a COA, Bradford continued replacing the clapboard with vinyl siding and completed the work on April 21, 2008. Three days later, on April 24, 2008, Bradford applied for a COA under protest and solely "as a courtesy to the [HPC]." (Appellant's App. p. 85). After a hearing before the HPC on May 21, 2008, the application was denied as it was found that the utilization of vinyl siding was inconsistent with the HPC design guidelines.

4

On June 18, 2008, Bradford filed its Complaint for Declaratory Judgment against the HPC alleging a violation of its due process rights because it was not given actual notice of the enactment of the historic district and requesting that the ordinance be declared void, together with a finding that the action constituted a taking of its property. On August 31, 2009, the HPC filed its answer as well as a counterclaim in which it alleged that Bradford had violated the regulatory provisions of the ordinance. On November 18, 2009, Bradford amended its Complaint, adding the City as a party.

On November 10, 2010, the HPC and the City filed a joint motion for summary judgment, designation of evidence, and memorandum of law. On December 28, 2010, Bradford filed its reply and a cross-motion for summary judgment. On May 25, 2011, the trial court conducted a hearing on the motions and on July 26, 2011, issued its summary judgment in favor of Bradford but denied Bradford's cross-motion for summary judgment. The trial court concluded in pertinent part:

> 2. The Ordinance in question in the instant case is not one that is applied uniformly to all property owners and/or citizens in the City of New Albany, but is only applicable to those within the proposed [h]istoric [d]istrict. . . .
>
> 3. The elementary and fundamental requirement of due process in any proceeding, which is to be accorded finality, is that notice should be *reasonably calculated*, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present objections.
>
> * * *
>
> 14. The court concludes that [NAHPC's] notice to [Bradford] that (a) its property was designated to possibly be in the [h]istoric [d]istrict, (b) concerning details and terms of the initial designation, (c) delivery of any preliminary draft, and (d) designation of boundaries, based upon the above authorities, was not in compliance with the due process requirements[.]

15. Notice by publication in the case at bar was inadequate because, *under the circumstances*, it was not *reasonably calculated* to reach those who could easily be informed by other means at hand." A process which is a mere gesture is not due process, in a legal sense. The [NAHPC's] failure to comply with its own published notice procedures is not constitutional due process.

16. A taking by inverse condemnation includes any substantial interference with private property which destroys or impairs one's free use and enjoyment of the property or one's interest in the property. An Ordinance providing for a historical district, however imperfectly utilized, under a procedure authorized by state legislation is not a "taking" sufficient to invoke an inverse condemnation claim, in this case.

* * *

19. Upon review of the photos and exhibits filed in the [s]ummary [j]udgment record, the court concludes that the installation of the vinyl siding at issue did not effect a "conspicuous change" in appearance that is negative or harmful to [d]istrict purposes, or contrary to the purposes of the Historic Preservation Commission in this state under applicable statute. A [COA] was not required from [the NAHPC] in order for [Bradford] to complete installation of the siding, given the facts and circumstances of this case.

20. To the extent the [NAHPC] assert the May 21, 2008, "denial" of [Bradford's] request for a [COA] as a valid official action of NAHPC, that assertion was/is contrary to law. Such action was of no valid legal effect. Under the circumstances of this case and in view of noncompliance with its own Rules of Procedure the power of NAHPC to take action like that was never implicated due to the failures of notice to [Bradford] at the relevant times cited since 2002.

21. To require Bradford to remove the vinyl siding, in view of failures of notice, and noncompliance with procedures as set forth herein, would be unreasonable and an economic waste.

(Appellant's App. pp. 14, 17-19) (internal citations omitted).

The NAHPC now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

6

APPEAL

I. *Summary Judgment*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiffs' claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id*. However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id*.

7

## II. *Notice Requirement*

The NAHPC contends that the trial court erred in granting summary judgment in favor of Bradford and in invalidating the City's ordinance. The NAHPC claims that the City's ordinance designating the downtown historic district was not a legislative act for the purpose of the U.S. Constitution's Fourteenth Amendment due process provision and therefore, Bradford was not entitled to actual notice of the ordinance. In response, Bradford maintains that the disputed ordinance amounted to an adjudicative or administrative act and thus fell within the notice guidelines proposed by *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Applying *Mullane*, Bradford claims it was entitled to actual notice.

The Fourteenth Amendment to the United States Constitution provides that "[n]o state . . . shall . . . deprive any person of life, liberty, or property without due process." In clarifying the wording of the Fourteenth Amendment, the Supreme Court has held that "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property *by adjudication* be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane*, 339 U.S. at 309 (emphasis added).

The line between legislation and adjudication is not always easily drawn. In *LC & S, Inc. v. Warren Co. Area Pln. Comm*, Judge Posner designed a workable rationale to distinguish between legislation and adjudication:

8

Legislative due process seems almost an oxymoron. Legislation is prospective in effect and, more important, general in its application. Its prospective character enables the persons affected by it to adjust to it in advance. Its generality offers further, and considerable, protection to an individual or organization that might be the legislature's target by imposing costs on all others who are within the statute's scope. . . . Prospectivity and generality of legislation are key elements of the concept of the rule of law, a concept that long predates either the equal protection or the concern with procedural regularity embodied in our modern concept of due process of law. The right to notice and a hearing, the essence of that concept, are substitutes for the prospectivity and generality that protect citizens from oppression by legislators and thus from the potential tyranny of electoral majorities. The generality of legislation makes notice by service or otherwise impracticable; many of the persons affected by the legislation will be unknown and unknowable.

*LC & S, Inc. v. Warren Co. Area Pln. Comm.*, 244 F.3d 601, 603 (7th Cir. 2000). *See also Bi-Metallic Investment Co. v. Bd of Equalization*, 239 U.S. 441, 445 (1915); *City of Eastlake v. Forest City Enterprises, Inc.* 426 U.S. 668 (1976); *Pro Eco, Inc. v. Bd. of Comm. of Jay Co.*, 57 F3d 505, 513 (7th Cir. 1995).

In *LC & S*, *Inc.*, the plaintiffs obtained from the State of Indiana a liquor license for use in Williamsport, a town with a population of 1800, and leased a building in anticipation of opening a restaurant in it where liquor would be served. *Id*. The building was in a district zoned for commercial use and the operation of a tavern was a permitted use in that zoning district. *Id*. However, prior to the opening, "rumors swept Williamsport that a topless bar, or perhaps a gay bar, was coming to the town and that in fact it would be opening in the building the plaintiffs had leased." *Id*. In response to the rumors, the county's planning commission recommended that the town council amend its zoning ordinance to make "taverns" special exceptions to the uses permitted in the commercial zoning district. *Id*. This required the plaintiffs to apply to the planning

9

commission's board of zoning appeals for permission. *Id.* The town council amended the ordinance accordingly, but grandfathered the only existing bar in Williamsport. *Id.* When the plaintiffs became aware of the new procedures, they applied for a special exception which was denied. *Id.* They brought a federal constitutional suit, claiming that the amendment to the zoning ordinance had deprived them of property without due process of law. *Id.* at 603-04. The plaintiffs claimed that the amendment was adjudicative in nature because it was aimed solely at them and therefore they should have been entitled to notice of the proposed amendment and an opportunity for a hearing. *Id.* at 604.

The court concluded that "[n]ot the motive or stimulus, but the generality and consequences of an enactment determine whether it is really legislation or really something else." *Id.* The court stated that the amendment operated prospectively, regulating a future use but not imposing a sanction for past conduct. *Id.* "[I]t applied to anyone who might want to open a new tavern in Williamsport, not just the plaintiffs." *Id.* at 605. "Obviously the domain of this legislation is limited, but it is limited basically by the size of Williamsport. It cannot be the law that small towns cannot legislate because they are likely to know just who is the likely to be hurt by the legislation, and the who may indeed be singular." *Id.* The court concluded that the amendment constituted legislation for purposes of the Fourteenth Amendment and therefore no notice or opportunity to be heard was constitutionally required. *Id.*

Here, the City's ordinance enacting the downtown district as historic was prospective and general in nature. The ordinance purports to regulate only future conduct

10

to be consistent with the provisions of the historic preservation ordinance; it does not impose fines for past behavior or requires past improvements to be modified in any way. It is generally and equally applicable to all property owners within its boundaries. Merely because the historic district does not encompass the entirety of New Albany does not diminish its general character. *See id*. While the application of the historic preservation ordinance is based on facts dependent on the individual property owner, the ordinance's character itself is general in nature. Despite Bradford's argument that it was entitled to actual notice because all property owners were known and therefore could individually be notified, the ease with which notice could be effected is not a hallmark of legislation; generality and prospectivity are.

Moreover, in *Krimendahl v. Common Council of City of Noblesville*, 267 N.E.2d 547, 551 (Ind. 1971), our supreme court noted that

> as a general rule, the enactment of an ordinance by a city council, the elected, legislative organ of municipal government in this State, is considered to be an exercise of the legislative power of State government, and as such is exempt from the due process requirements of a trial-type hearing.

*See also City of Hobart Common Council v. Behavioral Inst. of Indiana, LLC*, 785 N.E.2d 238, 246 (Ind. Ct. App. 2003) (when a common council acts in a legislative capacity, it is not subject to due process requirements).

Accordingly, based on *Mullane*'s premise and the case law's distinction between legislation and adjudication, we conclude that the City's enactment of the ordinance designating its downtown as a historic district was a legislative act which did not fall

11

within the purview of the due process requirements of the Fourteenth Amendment.[1]  As such, Bradford was not entitled to actual notice of the City's ordinance.  We reverse the trial court's summary judgment in favor of Bradford on this ground and grant summary judgment to NAHPC.

### III.  *Certificate of Appropriateness*

Next, the NAHPC disputes the trial court's grant of summary judgment to Bradford by concluding that Bradford was not required to obtain a COA prior to replacing the original siding on his property located within the downtown historic district because the replacement did not amount to a conspicuous change to the exterior of the house.  The trial court based its conclusion on the fact that the replacement of the original wood siding with vinyl siding was "not negative or harmful to the [d]istrict's purposes, or contrary to the purposes of [the HPC][.]"  (Appellant's App. p. 18).

The New Albany Ord. § 151.06 states in pertinent part

(A) A Certificate of Appropriateness must be issued by the Preservation Commission before a permit is issued for, or work is begun on, any of the following:

> 1.  Within all areas of a historic district:
>        a. The demolition of any building or structure;
>        b. The moving of any building or structure;

---

[1] In a related argument Bradford claims that the City violated the notice requirements included within the HPC's Rules of Procedure.  Specifically, these Rules state that all property owners within the newly proposed historic district shall be notified and a public hearing shall be held for discussion and clarification of the proposed district.  (*See* Appellant's App. p. 159).
However, first it should be noted that the alleged violation did not serve as an independent basis of the trial court's grant of summary judgment.  Although the trial court mentioned these rules very briefly, the trial court's conclusion with respect to notice is based solely on the due process mandate of the Fourteenth Amendment.  But, secondly and more importantly, in support of its argument, Bradford designated Rules of Procedure which were adopted on March 9, 2006.  The events at issue all took place in 2002.  Bradford did not designate any evidence supporting his claim that the HPC violated its own notice requirement in 2002.  Therefore, we cannot evaluate its argument.

c. A conspicuous change in the exterior appearance of any historic building or any part of or appurtenance to such building, including walls, fences, light fixtures, steps, paving, and signs, by additions, reconstruction, alteration, or maintenance involving exterior color changes if cited by individual ordinance; or

d. Any new construction of a principal building or accessory building or structure subject to view from a public way.

2. Within a primary area of historic district:
a. A change in walls or fences, or the construction of walls or fences along public ways;

b. A conspicuous change in the exterior appearance of a non-historic building subject to view from a public way by additions, reconstruction, alteration, and/or maintenance involving exterior color change.

(Appellant's App. pp. 65-66).

As Bradford did not demolish, move, or build a construction, his situation falls within section (c) of 151-06(A)(1) of the ordinance. Although the section revolves around a "conspicuous change," the word "conspicuous" itself is not defined in the ordinance. Statutory interpretation is the responsibility of the court and is reviewed *de novo*. *See Sun Life Assur. Co. of Canada v. Ind. Dept. of Ins*., 868 N.E.2d 50, 55 (Ind. Ct. App. 2007), *trans. denied*. Our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature. *Gee v. Tree Servicing, LLC*, 934 N.E.2d 1260, 1262 (Ind. Ct. App. 2010). We review the statute as a whole and presume the legislature intended a logical application of the language used in the statute, as to avoid unjust or absurd results. *Id*.

Black's Law Dictionary defines conspicuous as "clearly visible or obvious." BLACK'S LAW DICTIONARY 323 (8th Ed. 2004). Unlike the trial court's interpretation,

13

"conspicuous" does not carry a negative or harmful connotation; rather, the meaning relates to visibility or likelihood of being seen. In *Tourkow v. City of Fort Wayne*, 563 N.E.2d 151, 151 (Ind. Ct. App. 1990), *trans. denied*, a homeowner appealed the historic preservation review board's denial of her application for a COA to replace the insulbrick siding on her house with vinyl siding. Faced with the requirement that before "a conspicuous change in the exterior appearance" of a property located in a historic district can occur a COA must be obtained, we concluded that "[t]he addition of vinyl siding to the exterior of a house is clearly a 'conspicuous change' in appearance." *Id*. at 153. As such, we interpreted conspicuous in accordance with its dictionary meaning.

Likewise here, Bradford's modification of replacing the original wood siding with vinyl siding on his property located in the historic district amounted to a visible change in the exterior of the building. Therefore, as it was a conspicuous change in the exterior appearance pursuant to New Albany Ord. § 151.06(A)(1)(c), Bradford had to obtain a COA prior to undertaking the work. We reverse the trial court's grant of summary judgment in favor of Bradford and grant summary judgment to the NAHPC.

CROSS APPEAL

In its cross-appeal, Bradford contends that the trial court erred when it denied his cross-claim for summary judgment on his argument of inverse condemnation. Specifically, Bradford argues that the Takings Clause of the Fifth Amendment to the United States Constitution prohibits the taking of property without just compensation. Bradford alleges that the City's ordinance designating the historic district amounted to a demand for cost-prohibitive repairs which deprived it of the property's economic use.

14

The Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use without just compensation." U.S. Const. Amend. V. Although property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking. *Bd. of Zoning Appeals v. Leisz*, 702 N.E.2d 1026, 1028 (Ind. 1998). There are two discrete categories of regulations that violate the Takings Clause regardless of the legitimate interest advanced. *Id*. The first consists of regulations that compel a property owner to suffer a physical invasion, no matter how minute, of his property. *Id*. at 1028-29. The second category concerns regulations that deny "all economically beneficial or productive use of the land." *Id*. at 1029. Here, Bradford does not allege a physical invasion, rather it advances a claim for a regulatory taking.

Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex set of factors, including: (1) the regulation's economic effect on the landowner; (2) the extent to which the regulation interferes with reasonable investment-backed expectations; and (3) the character of the government action. *Ragucci v. Metro Dev. Comm'n of Marion Co*., 702 N.E.2d 677, 683 (Ind. 1998).

First, with respect to the City ordinance's economic effect, Bradford relies on the Affidavit by Ronald Craig, one of Bradford's principals, who testified that:

> [NAHPC's] demand to replace the siding with wood is economically impracticable. The building is already expensive to maintain relative to the rental value. Removing the vinyl siding and repairing the weathered wood siding with new wood siding of a similar kind and the continued repainting of the same is not financially rational for me or any other owner.

(Appellant's App. pp. 140-41). Initially we note that while Craig's affidavit makes conclusory statements that repairing the original clapboard siding with similar wood siding is not financially rational, it fails to provide a supporting factual basis for the conclusion and thus merely serves as a self-serving affidavit. *See Abdalla v. Qadorh-Zidan*, 913 N.E.2d 280, 288 (Ind. Ct. App. 2009), *trans. denied* (a party's self-serving affidavit cannot be used to satisfy the party's burden on summary judgment). Furthermore, as we have held in the past, a diminution of property value, standing alone, will not establish a taking. *See Ragucci*, 702 N.E.2d at 683.

With respect to the City's ordinance's interference with reasonable investment-backed expectations, we find that the ordinance does not prohibit improvements or maintenance on existing structures, it merely regulates the manner in which the improvements or maintenance are to be performed. It is within Bradford's decision to maintain the property and the timeline thereof. Bradford's investment-backed expectations are no more frustrated than those of a landowner who bought a piece of land expecting to develop it in a certain manner, only to later find the municipality enacted a zoning ordinance that seriously restricts those plans. *See id*. at 684.

Lastly, the character of the governmental action also weighs against finding an unconstitutional taking. A taking is more readily found when the government action is "characterized as a physical invasion," and less likely when the "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id*. (citing *Penn Central Transportation Co. v. City of New York*, 438

16

U.S. 104, 124, 98 S.Ct. 2646 (1978)). In *Penn Central*, the Supreme Court upheld comprehensive governmental regulation of private property designed to preserve historic buildings in the City of New York. *See id.* Likewise, our Supreme Court has recognized that states and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city. *See, e.g., New Orleans v. Dukes*, 427 U.S. 297, 96 C.Ct. 2513, 49 L.Ed.2d 511 (1976); *Berman v. Parker*, 348 U.S. 26, 33, 75 S.Ct. 98, 201, 99 L.Ed. 27 (1954). Here, the purpose of the City's ordinance is "to promote the educational, cultural and general welfare of the citizens of New Albany and [] to ensure the viability of the [d]owntown and other historic commercial activities and to enhance tourism[.]" (Appellant's App. p. 61). As such, the ordinance serves a substantial public purpose. We conclude that no taking has occurred and affirm the trial court's denial of Bradford's request for summary judgment on his claim of inverse condemnation.

## CONCLUSION

Based on the foregoing, we find that Bradford was not entitled to actual notice of the potential designation of the historic district and that Bradford was required to obtain a Certificate of Appropriateness when it replaced the property's original siding with vinyl siding. Therefore, we reverse the trial court's grant of summary judgment in favor of Bradford and grant summary judgment on these grounds to NAHPC.

Also, we conclude that the trial court properly denied Bradford's request for summary judgment on his claim for inverse condemnation

Reversed in part and affirmed in part.

17

MATHIAS, J. concurs

FRIEDLANDER, J. dissents with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

NEW ALBANY HISTORIC PRESERVATION )
COMMISSION and CITY OF NEW ALBANY )
                                   )
    Appellants-Defendants,         )
                                   )
        vs.                      )     No. 22A01-1108-PL-365
                                   )
BRADFORD REALTY, INC.,             )
                                   )
    Appellee-Plaintiff.            )
                                   )

**FRIEDLANDER, Judge, dissenting**

I agree with the Majority that Bradford Realty's notice that this property was to be designated as located within a historic district comported with due process principles. I also agree that the trial court erred in concluding that Bradford had a claim for inverse condemnation. I respectfully dissent, however, from the conclusion that the trial court erred in ruling that Bradford was not required to obtain a Certificate of Appropriateness (COA) when it replaced the original siding with vinyl siding.

The Majority aptly notes that this question turns upon the interpretation of New Albany Ordinance § 151-06(A)(1)(c), and specifically upon the meaning of "conspicuous

19

change." Focusing on the term "conspicuous", the Majority concludes that this phrase means "clearly visible or obvious." I agree with that. Clearly, it refers to appearance. We cannot lose sight of the fact, however, that "conspicuous" modifies the term "change". Therefore, I interpret Ordinance § 151-06(A)(1)(c) to mean that a COA is necessary if the owner seeks to do something that will effect a change that is clearly visible or obvious. In common terms, it would seem that the pertinent inquiry is whether the work in question effects a change from the way the structure looked before the work was performed. I note also that merely repainting a structure would not require a COA unless the new color is different than the old color. *See* Ordinance § 151-06(A)(1)(c) (a COA must be issued before a permit is issued for a "a conspicuous change in the exterior appearance of any historic building … by … maintenance involving exterior color changes"). Thus, for instance, although repainting a house using the same color will presumably result in a noticeable difference in appearance, such would not require a COA unless the new color is different from the old. This leads me to conclude that "conspicuous change" does not include *any* work that effects a perceptible result with respect to appearance, such as a fresh coat of paint that is the same color, but instead, considered in context, it can only mean a change *in character* with respect to appearance.

Turning now to the instant case, the question is whether the new vinyl siding installed by Bradford Realty effected a conspicuous change in appearance with respect to the character of the building in question. The Majority concludes that it did, citing *Tourkow v. City of Fort Wayne*, 563 N.E.2d 151 (Ind. Ct. App. 1990), *trans. denied*. In so doing, the Majority cites *Tourkow* in a manner that seems to support the sweeping

proposition that replacing wood siding with vinyl siding *always* constitutes a conspicuous change in appearance. *See* slip op. at 14 ("Bradford's modification of replacing the original wood siding with vinyl siding on his property located in the historic district amounted to a visible change in the exterior of the building"). I acknowledge that there is language in *Tourkow* that would tend to support this generalization. *See Tourkow v. City of Fort Wayne*, 563 N.E.2d at 153) ("[t]he addition of vinyl siding to the exterior of a house is clearly a 'conspicuous change' in appearance"). I note, however, that this conclusion in *Tourkow* was not drawn in a situation where, as here, wood clapboard siding was replaced with vinyl siding. Rather, in that case insulbrick was replaced with vinyl siding. Insulbrick consists of a fiberboard sheathing coated with tar and an embedded granular material, which is usually embossed and colored to look like brick or stone. Clearly, a change from insulbrick to vinyl siding, i.e., from simulated stone or brick to vinyl-covered clapboard siding, would result in a conspicuous change with respect to the character of the building's appearance.

Be that as it may, I reject *Tourkow* as authority for the proposition that the application of vinyl siding to wood clapboard siding as a matter of law *necessarily* effects a "conspicuous change in appearance" within the meaning of Ordinance § 151-06(A)(1)(c). First, the original siding in *Tourkow* to which the vinyl siding replacement must be compared differed markedly from the original siding in the instant case. Second, even assuming *Tourkow* could be interpreted as having established that vinyl siding is, as a matter of law, conspicuously different in appearance from wood siding, I believe that determination is dated and therefore no longer valid. *Tourkow* was decided more than

21

twenty years ago and the quality and appearance of artificial siding has advanced steadily and somewhat markedly. Perhaps there was a time when all vinyl siding was markedly different from wood in appearance, but that is no longer the case.

This leads me to conclude that the assessment of whether the vinyl siding installed by Bradford resulted in a "conspicuous change" within the meaning of Ordinance § 151-06(A)(1)(c) is one that must be made by reviewing the appearance of the home before and after the work was completed. The only way for this court to review the appearance on the home would be through photographs. Fortunately, the parties included photographs in the record that depict the home before, during, and after the work was completed. I reiterate that, in my view, these are the sole means by which we can evaluate the claim of "conspicuous change" with respect to appearance. These photos reflect that the exterior walls of the structure had what appears to be weathered and somewhat faded white clapboard siding before the work was performed. After the work was completed, it still appeared to have exterior walls made of white clapboard siding. The only difference between the two that can I perceive is that, although the house is the same color in the "after" photo as before, it is brighter – just as a house would look with a fresh coat of paint. So far as I can see, the house looks the same and is the same color, albeit with the appearance of being newly painted. This is not a conspicuous change in appearance with respect to the character of the building within the meaning of Ordinance § 151-06(A)(1)(c), and I would affirm the trial court on that basis.