# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**LESLIE C. SHIVELY**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**TODD J. JANZEN**
**BRIANNA J. SCHROEDER**
Plews Shadley Racher & Braun, LLP
Indianapolis, Indiana

AMICUS BRIEF

Indiana Agricultural Law Foundation, Inc.
**JUSTIN SCHNEIDER**
**MARK THORNBURG**
**SARA MACLAUGHLIN**
Indianapolis, Indiana

Indiana Dairy Producers
**GREGORY A. NEIBARGER**
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

Indiana Soybean Alliance, Inc.
Indiana Corn Growers Association
**DANIEL P. McINERNY**
Bose McKinney & Evans, LLP
Indianapolis, Indiana

Indiana Pork Advocacy Coalition
**JOSHUA TRENARY**
Indianapolis, Indiana

Indiana State Poultry Association
**JOSEPH A. MILLER**
Seymour, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

GLENN PARKER, As Trustee Under the )
Revocable Declaration of Trust Agreement of )
Glenn Parker, GLENN PARKER, Individually )
and PHYLLIS C. PARKER, Individually, )
)
    Appellants-Plaintiffs, )
)
        vs. )     No. 26A05-1209-PL-450
)
OBERT'S LEGACY DAIRY, LLC, )
)
    Appellee-Defenfdant. )

---

APPEAL FROM THE GIBSON SUPERIOR COURT
The Honorable Earl G. Penrod, Judge
Cause No. 26D01-1106-PL-14

---

**April 30, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Plaintiffs, Glenn Parker (Glenn), individually and as Trustee under the Revocable Declaration of Trust Agreement of Glenn Parker, and Phyllis C. Parker (Phyllis) (collectively, the Parkers), appeal the trial court's grant of summary judgment in favor of Obert Legacy Dairy, LLC (the Dairy).

We affirm.

## ISSUE

The Parkers raise one issue on appeal which we restate as follows: Whether the Indiana Right to Farm Act bars their nuisance claim against the Dairy.

FACTS AND PROCEDURAL HISTORY

The Parkers own approximately 68 acres of land in Fort Branch, Gibson County, Indiana. In 1965, the property was given to them by Glenn's mother, who had acquired it in 1934. In 1972, Glenn built a house on the property where the Parkers have resided ever since. Outbuildings and grain silos are also located on the property. Although employed by Ball Corporation in Muncie, Indiana for many years, Glenn "hobby farmed" the land surrounding his home until 2005. (Appellants' Amended App. p. 30). Thereafter, Glenn leased the farmland to Ron Miley (Miley), who grows corn and soybeans.

The Obert family, members of whom own either the Dairy or Obert's Farm Property, Inc. (the Obert Farm), have engaged in farming in Gibson County since 1830. The Obert family's property consists of approximately 157 acres adjacent to the Parkers' property. Of these 157 acres, two 45 acre-tracts comprise the Obert Farm, which represents the family's original dairy farm and includes a residence, silos, other dairy farm structures, and approximately 100 cows. The Dairy operates on the remaining 67 acre-tract, which the Oberts acquired "sometime after 1965," and was originally used as cropland to support the dairy. (Appellants' Amended App. p. 77-A).

In 2006, members of the Obert family formed the Dairy for tax and estate planning purposes and sought to expand operations by increasing the number of cows and adding

3

new facilities and equipment. After examining possible locations, the Oberts decided to utilize part of the 67 acre-tract for the expanded dairy operation, which would include a concentrated feeding operation. In July or August 2009, the Oberts sent notice of their intentions to their neighbors, including the Parkers.

On September 18, 2009, the Dairy applied to the Indiana Department of Environmental Management (IDEM) for a National Pollutant Discharge Elimination System, Concentrated Feeding Operation (NPDES CAFO)[1] general permit for a maximum of 900 dairy cows and 80 dairy calves. In October 2009, Glenn sent a letter to IDEM in protest. He stressed that although he supported family farming, in contrast, the Dairy sought to become a "factory-like 'mega-farm.'" (Appellants' Amended App. p. 116). As his home was the closest residence to the Dairy's planned facilities, due to the prevailing wind patterns, Glenn alleged that the increased odors from the Dairy's proposed confined feeding operation would be "first and foremost concentrated on [his] home." (Appellants' Amended App. p. 115). Glenn also speculated that the Oberts deliberately placed the proposed operation away from their residence to avoid the potential increase in odors. On March 9, 2010, IDEM granted the Dairy's application,

---

[1] Although the Parkers refer to the Dairy's operation as a confined feeding operation, the IDEM permit licenses the Dairy to conduct a concentrated feeding operation. As we noted in *Jennings Water, Inc. v. Office of Environmental Adjudication*, 909 N.E.2d 1020, 1022 n.1 (Ind. Ct. App. 2009), *trans. denied*, there is a statutory distinction between a confined feeding operation and a concentrated feeding operation, "but each features the confined feeding of certain animals." Given the language of the permit, we use the term concentrated feeding operation throughout this opinion.

issuing a five-year NPDES CAFO permit. Currently, the Dairy houses approximately 760 dairy cows.

On June 28, 2011, the Parkers filed their complaint for nuisance, which was amended on May 14, 2012. The Parkers alleged that the Dairy's concentrated feeding operation produced offensive odors, devalued their property, and caused them "discomfort, inconvenience, and personal injury." (Appellants' Amended App. p. 106). On August 22, 2011, the Dairy filed its answer asserting the Indiana Right to Farm Act, Ind. Code § 32-30-6-9, as an affirmative defense.

On April 25, 2012, the Dairy filed its motion for summary judgment. On June 19, 2012, the trial court held a hearing on the motion. On August 27, 2012, the trial court granted summary judgment to the Dairy. In pertinent part, the trial court concluded that the Act barred the Parkers' nuisance claim:

> To avail itself of the protections of the [Act], [the Dairy] must demonstrate that it is an agricultural operation in continuous operation on the locality for more than one year, there have been changed conditions in the vicinity of the locality and there has been no significant change in the type of operation.

> [T]he evidence demonstrates that Obert Farms is an agricultural operation as defined by [I.C. §] 32-30-6-1 as the Obert family has been operating a dairy farm which has included producing crops, livestock and milk.

> The evidence also shows that Obert Farms has been in continuous operation for many, many years (well more than one year) on the locality. Contrary to the [Parkers'] assertion, locality as defined in I.C. § 32-60-6-3 is appropriately understood to mean all of the facilities and land used in the entire agricultural operation. The [c]ourt concludes that it is of no moment that the Obert [d]airy farm operation consists of more than one tract of land with separately described properties because it is clear that all facilities and

the various tracts of land, including the 67 acres on which the expansion is located, are part of the same agricultural operation which is being conducted on that locality.

Further, the evidence demonstrates that the conditions have changed in the vicinity of the locality in that what was once a fully agricultural area now contains several non-farm residences, including that of the Parkers. Clearly, this is not a case in which the Parkers moved to the nuisance as that expression is typically understood, but it is equally clear that the vicinity of the locality has changed over the years in that non-agricultural land uses (non-farming residences) are now extending into this agricultural area. […]. […] the [c]ourt concludes that the Act is applicable when non-agricultural land uses such as non-farming residences extend into agricultural areas, whether as a result of 'non-farmers' moving into the area or, as in the present case, when 'erstwhile farmers' now utilize the land as a non-farming residence after ceasing farm operations. In either case, the non-agricultural land uses (non-farming residences) now extend into agricultural areas.

Further, the evidence shows that there has been no significant change in the type of operation of the Obert [d]airy [f]arm operation. While the court concedes that whether there has been a significant change in the type of operation initially sounds as though it would be a question of fact for the jury, the court finds the evidence is undisputed in that any changes to the operation are not significant changes as that term is defined by law.

(Appellants' Amended App. pp. 12-14).

The Parkers now appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A fact is material if its resolution would affect the outcome of the case. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). An issue is genuine if a trier of fact

6

is required to resolve the parties' differing accounts of the truth or if the undisputed facts support conflicting reasonable inferences. *Id*.

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Ogden v. Robertson*, 962 N.E.2d 134, 140 (Ind. Ct. App. 2012), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*.

The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *New Albany Historic Preservation Comm'n v. Bradford Realty, Inc.*, 965 N.E.2d 79, 84 (Ind. Ct. App. 2012). When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiffs' cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiffs' claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

Here, the trial court issued findings of fact and conclusions of law in support of its grant of summary judgment. Its findings on summary judgment are not binding on appeal. *Myers v. Coats*, 966 N.E.2d 652, 656 (Ind. Ct. App. 2012). Although an aid to

7

appellate review, the trial court's findings and conclusions merely afford the appellant an

opportunity to address the merits of the trial court's rationale. *Id.*

The Parkers contend that the trial court erred in granting summary judgment based

on its conclusion that the Indiana Right to Farm Act (the Act) bars their nuisance claim.

Nuisance is defined by statute as:

> [w]hatever is:
> > (1) injurious to health;
> > (2) indecent;
> > (3) offensive to the senses; or
> > (4) an obstruction to the free use of property;
>
> so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

Ind. Code § 32-30-6-6. However, the Act limits a plaintiff's ability to bring a nuisance

action against an agricultural operation. In particular, the Act provides:

> (d) An agricultural or industrial operation or any of its appurtenances is not and does not become a nuisance, private or public, by any changed conditions in the vicinity of the locality after the agricultural or industrial operation, as the case may be, has been in operation continuously on the locality for more than one (1) year if the following conditions exist:
> > (1) There is no significant change in the type of operation. A significant change in the type of agricultural operation does not include the following:
> >
> > > (A) The conversion from one type of agricultural operation to another type of agricultural operation.
> > > (B) A change in the ownership or size of the agricultural operation.
> > > (C) The:
> > > > (i) enrollment; or
> > > > (ii) reduction or cessation of participation; of the agricultural operation in a government program.
> > > (D) Adoption of new technology by the agricultural operation.

8

(2) The operation would not have been a nuisance at the time the agricultural or industrial operation began on that locality.

I.C. § 32-30-6-9(d).

The Dairy asserted and the trial court agreed that the Act bars the Parkers' nuisance action against it. On appeal, the Parkers make three arguments that the Act does not bar their nuisance claim. First, the Parkers assert the Act does not apply in a nuisance action between two agricultural operations. Second, they contend that the Oberts' conversion of a specific part of their farm, from crops to a concentrated feeding operation, constitutes a significant change precluding the Act's applicability. Finally, the Parkers argue that the Act has no applicability since they have resided at their property for years before the alleged nuisance began.

In support of their first argument that the Act does not apply in a dispute between two agricultural operations, the Parkers rely on *TDM Farms of North Carolina v. Wilhoite Family Farm*, 969 N.E.2d 97, 110 (Ind. Ct. App. 2012). In *TDM Farms*, this court held that "the Act does not apply in [a nuisance] action between two established farming operations." *Id*. A porcine virus broke out on TDM Farms and spread to the Wilhoite Family Farm, a neighboring commercial hog farm, causing losses. *Id*. at 99. In concluding that the Act did not apply to bar Wilhoite Family Farms' nuisance claim, we reasoned that the Act "was intended to prohibit nonagricultural land uses from being the basis of a nuisance suit against an established agricultural operation." *Id*. at 111.

Because the Wilhoite Family Farm, one established agricultural operation, brought suit against another, TDM Farms, the Act did not apply. *Id.*

In contrast, the Parkers here asserted nonagricultural land uses as the basis of their nuisance suit against the Dairy. Their claims are for the odor emanating from the Dairy and the discomfort and devaluation of property values which it may entail. The lease of their property to Miley does not alter this because the Parkers allege no damages to Miley's crop farming operation. Therefore, we conclude that *TDM Farms* is not applicable to this case.

Next, the Parkers assert that the Act does not apply because the Dairy's concentrated feeding operation differs from the historical Obert family farm. Specifically, the Parkers argue that the applicable locality under the Act refers to the 67 acre-tract where the Dairy is located, rather than the two 45 acre-tracts where the Obert Farm sits. Since it commenced operations within a year of filing their claim, the Parkers contend the Act does not bar their nuisance claim against the Dairy.

Under the Act, an agricultural operation "is not and does not become" a nuisance if the operation has been in operation on the locality for more than one year so long as no significant change has occurred. I.C. § 32-30-6-9(d). The Act defines "locality" as "the specific area of land upon which an […] agricultural operation […] is conducted." I.C. § 32-30-6-3(1)(A). Further, a "conversion from one type of agricultural operation to another type of agricultural operation" does not constitute a significant change. I.C. § 32-30-6-9(d)(1)(A).

Here, our review of the evidence reveals that prior to expansion, the Oberts used the 67 acre-tract to produce crops for their dairy farming operation. The IDEM permit covers both the Dairy and the Obert Farm. The IDEM permit is not "site-specific" and states that the Dairy constitutes a "four-unit confinement operation" with two existing dry cow barns for 150 cows and one existing calf barn for 80 calves. (Appellants' Amended App. pp. 131). As the permit contemplates that a "freestall barn" for 750 cows will be constructed by the Dairy, it is clear that the permit covers both the original Obert family farm as well as the Dairy. (Appellants' Amended App. pp. 131). Contrary to the Parkers' argument, the undisputed facts show that the Dairy's 67 acre-tract and the Obert Farms' two 45 acre-tracts exist as a single agricultural operation and therefore together constitute the specific area of land upon which the agricultural operation is conducted under I.C. § 32-30-6-3.

Finally, the Parkers argue that "[t]he Act was never intended to bar a nuisance claim by landowners […] who have lived in an area for more than 40 years and then are impacted by a significant change in use, such as the [concentrated] feeding operation, which is established long after the acquisition of the property and establishment of the use of the property by the landowners." (Appellants' Br. p. 10). We conclude that the Parkers' argument is without statutory support.

"A significant change in the type of agricultural operation does not include […] [t]he conversion from one type of agricultural operation to another type of agricultural operation." I.C. § 32-30-6-9(d)(1)(A). By specifying that a conversion from one

11

agricultural operation to another is not a significant change, the Act removes claims against existing farm operations that later undergo a transition from one type of agriculture to another. Here, the Obert family farm converted that part of its operation used to produce crops to feed its cows into a dairy operation. Although the size of the transformation, from 100 cows to 760 cows, is substantial, this too does not constitute a significant change. See I.C. § 32-30-6-9(d)(1)(B). Consequently, the Oberts transformation of their family farm into that of a larger operation, does not, under these circumstances, give rise to an actionable nuisance under the Act. *See Laux v. Chopin Land Associates, Inc.*, 550 N.E.2d 100, 102 (Ind. Ct. App. 1990), *trans. denied*.

The Parkers argue that the legislature could not have intended the Act to apply to long-time residents whose daily, rural life suffers at the hands of a "factory-like 'mega-farm.'" (Appellants' Amended App. p. 116). However, it is clear that the Act insulates the Oberts' expansion of their dairy farm from nuisance suits under these circumstances. In sum, we affirm the trial court's grant of summary judgment in favor of the Dairy.

## CONCLUSION

Based on the foregoing, we conclude that the Act bars the Parkers' nuisance claim and the trial court properly granted summary judgment to the Dairy.

Affirmed.

BRADFORD, J. and BROWN, J. concur